CARL WINTER AND OTHERS v. FARMERS EDUCATIONAL
& COOPERATIVE UNION OF AMERICA (MINNESOTA
DIVISION) AND ANOTHER.
ROZELLA HENDRICKSON, SPECIAL ADMINISTRATRIX OF
ESTATE OF JOHN C. ERP, APPELLANT.

107 N. W. (2d) 226.

January 6, 1961—No. 37,991.

*R. M. Saltness,* for appellant.
*Charles A. Swenson,* for respondents.

MURPHY, JUSTICE.

This is an appeal from a judgment entered in a secondary action by stockholders. The trial court made an award in favor of the plaintiffs for the benefit of the corporation requiring the individual defendant, its president, to reimburse the corporation for sums withdrawn. We are concerned here with whether, upon the particular facts of this case, the objection that the complaint fails to state a cause of action may be raised for the first time on appeal.

The Farmers Educational and Cooperative Union of America (Minnesota Division) was incorporated in 1929 as a nonprofit, nonstock association pursuant to G. S. 1913, c. 58, and acts amendatory and supplementary thereto. The general purpose of the association was to promote the interests of agriculture by improving methods of production and distribution along cooperative lines. The defendant John C. Erp was one of the incorporators and was its first president. He held that office until his death, which occurred subsequent to the trial of this action in 1958. It appears that during all this time he was the dominating spirit in the corporation. Two of the plaintiffs are directors of the corporation and the other seven are members. They seek by this action to recover for the corporation the sum of $3,551.23, which they contend Erp has wrongfully appropriated to his own use. Erp admitted that he had withdrawn this sum from the corporate funds but alleged that it belonged to him as back salary.

Much of the record deals with the circumstances under which this money came into the hands of Erp. The evidence is unsatisfactory as

to the agreements between Erp and the corporation with reference to his compensation. It appears that the corporation reached its greatest growth in 1930, when it had a membership of over 4,000. At that time it was affiliated with a national cooperative organization. It lost its charter with that group in 1938, and from then on its fortunes declined until in 1951 it had but three dues-paying members and none in 1954. The money in question came into the hands of the defendant Erp legally. It represented part of the proceeds of a settlement involving patronage dividends due from another cooperative. With the approval of the directors, the money was deposited in a bank in Erp's hometown under the name "Farmers Educational and Co-operative Union of America (Minnesota Division), John C. Erp, President." He appropriated this fund to his own use by 10 withdrawals made during the period of 2 years from May 24, 1950, to May 27, 1952. In 1953 the propriety of these withdrawals was discussed at a directors' meeting. With reference to this meeting, the defendant Erp testified:

"That is the meeting I called. Well, I was asked to call it, yes. At that same meeting that you're referring to, the question of this money that was placed in the bank, and the disposition of that money came up, and I told them that I had checked out on it, and I told them if they wanted to recover that, they'd have to sue for recovery, and that I wouldn't give up without a suit. And at that same meeting, Mrs. [Oelke] protested, and said before we go to a law suit to deprive him of his back pay, I'm not going along with that law suit, she said, count me out."

The complaint alleged the interests of the individual plaintiffs; the wrongful appropriation of corporate funds to the defendant's personal use; the fact that the question of "restoration of the funds withdrawn, without authority," was brought to the attention of the board of directors; that they failed to take action to recover the money for the corporation; and that the action was brought by the plaintiffs in their own behalf and "on behalf of and for the benefit of * * * Farmers Educational and Co-operative Union of America (Minnesota Division), one of the Defendants herein, and in behalf of all other Members of said Defendant Corporation."

Defendant Erp's answer alleged that the corporation was indebted to him "in the sum of $25,550.00 for salary due and owing * * * as President of said corporation" and that he "retained the sum of $3,500.00 * * * and applied the same as a credit against said salary due and owing." He apparently admitted that the propriety of the withdrawal of these funds was brought to the attention of the board of directors but alleged that he "then and there advised said Board of Directors that he did not intend to repay said sum to defendant corporation." He further asserted that the corporation was indebted to him in the sum of $35,198.77 and alleged a counterclaim in that amount.

Although it is apparent from the record that a substantial part of the back-salary claim was for work periods in the 1930's and early 1940's, the plaintiffs did not interpose a reply alleging the statute of limitations as an affirmative defense.

After trial the court found that without authority of the board of directors and without knowledge and consent of its other members or officers the defendant Erp withdrew from the funds of the corporation the sum of $3,551.23 and that he was indebted to the corporation in that amount. The court further found that the corporation was not indebted to the defendant Erp and that he was not entitled to a setoff or counterclaim against the corporation. This particular finding is supported by the record. The judgment provides:

"That the Defendant, Farmers Educational and Co-operative Union of America (Minnesota Division), a Corporation, have Judgment against, and recover of, the Defendant, John C. Erp, the sum of Three Thousand Five Hundred Fifty-one Dollars and Twenty-three Cents ($3,551.23), with Interest * * *."

No motion for amended findings or a new trial was made by the defendant Erp but he appealed from the judgment. By his assignment of error, the defendant Erp contends that this is a secondary action by shareholders provided for by Rule 23.02 of Rules of Civil Procedure and, since the complaint does not set forth with particularity the conditions precedent for such an action, the complaint does not state a claim upon which relief can be granted. That rule, which is a restate-

ment of a long-recognized rule of equity, provides that one or more shareholders may institute an action for the benefit of the corporation where it refuses to enforce rights which may properly be asserted by it. The rule further provides that the complaint shall set forth—

"* * * with particularity the efforts of the plaintiff to secure from the managing directors or trustees and, if necessary, from the shareholders or members such action as he desires, and the reasons for his failure to obtain such action or the reason for not making such effort."

The plaintiffs, however, contend that this is a class action which may be properly brought by them under Rule 23.01.[1] Since the cooperative is in fact a corporate entity, we assume that the more particular provisions of Rule 23.02 which relates to stockholders' secondary actions would apply in this case.

It is apparent from the proceedings in the court below that there was no question raised as to which portion of Rule 23 should apply. If the defendant was aware of the conditions precedent required by Rule 23.02, the record would lead us to assume that he either conceded or waived the conditions provided by that rule. As a matter of fact, the action proceeded in the court below as if it were merely an action for debt by the corporation against the defendant Erp. This theory of the trial was clearly stipulated as shown by the record. Indicating that he proposed to rest on certain stipulations and the pleadings without introducing evidence in behalf of the plaintiffs, their attorney stated:

---

[1]Rule 23.01 provides:

"If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

"(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;

"(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

"Mr. Swenson [for plaintiffs]: Well, there is nothing further that we have, if it is understood that unless the defendant can establish a counter-claim or show some legal defense that would either set off or reduce the amount claimed in the Complaint, the plaintiff is entitled to judgment of the Court for the amount claimed in the Complaint.

"Mr. Saltness [for defendant]: Well, that is a matter for the ultimate determination by the Court. That is the very thing that we're trying here.

"Mr. Swenson: Well, if it's understood that is the status of our case right now, you go ahead with your defense.

"Mr. Saltness: I'm not going to stipulate what consideration the Court should give to our evidence. I'm not going to try to foreclose you from putting in any evidence and anything you want to present. I merely assume that it will be the defendants' obligation, really, to go forward with the evidence at this time. If you have something you want to put in first, you go ahead. I have no quarrel as to what order we do it in.

"Mr. Swenson: You go ahead, then.

"Mr. Saltness: I don't care to argue the law at this time, because I think it's a matter that should be very carefully briefed for the Court.

"Mr. Swenson: It isn't a question of arguing the law. It's just a question that it's understood that if you go ahead and we don't put in any further evidence but what we have got, it will be on the pleadings.

"Mr. Saltness: I don't care if you go ahead or I do, Charlie. I don't propose to limit you in putting in any evidence you feel inclined to put in. * * *

"Mr. Swenson: If that is understood, you just go ahead."

The same understanding of the issue is confirmed by the following discussion with reference to the admissibility of testimony during the trial:

"The Court: What is the purpose of that, Counsel?

"Mr. Saltness: To show the general picture of the corporation in line with what our arguments are going to be, as to the question of unjust enrichment in this case.

"The Court: Well, I'd like to have the case confined as to what basis he was justified in taking any of this money.

"Mr. Saltness: Well, that we expect to brief, too.

"The Court: On what ground was he justified in taking upon himself to withdraw any of this money that didn't belong to him, that is the crux of the whole case."

The present state of the record suggests important questions as to the interpretation of Rule 23, relating to class and secondary stockholders' actions; Rules 8.02, 8.03, and 8.04, relating to affirmative defenses; Rules 12.01, 12.02, and 12.03, relating to the manner in which defenses and objections may be presented; and Rule 12.08, relating to waiver of defenses. These questions, however, were not presented to or passed upon by the court below. The only question we are required to consider is whether, as applied to the particular facts before us, the objection may be raised for the first time on appeal that the complaint fails to state a claim for relief because it does not allege with particularity the "efforts" to secure from the managing directors the action the individual plaintiffs desired; it does not allege the reason for the failure to obtain such action, or the reason for not making such "effort."

■ Objections which go merely to the form of the pleading are waived and cannot be urged for the first time in the appellate court. They must be properly raised in the court below. Segerstrom v. Holland Piano Mfg. Co. 142 Minn. 104, 170 N. W. 930; Whipple v. Mahler, 215 Minn. 578, 10 N. W. (2d) 771; Becker County Nat. Bank v. Davis, 204 Minn. 603, 284 N. W. 789; Gleason v. Duluth Nest Order of Owls, 183 Minn. 512, 237 N. W. 196. However, if there is a complete failure to state a claim upon which relief can be granted, the defect is regarded as a fundamental one which may be raised for the first time in the appellate court. Lohman v. Edgewater Holding Co. 227 Minn. 40, 33 N. W. (2d) 842; Tjepkes v. State Farmers Mutual Ins. Co. 193 Minn. 505, 259 N. W. 2; Chicago, M. & St. P. Ry. Co. v. Sprague, 140 Minn. 1, 167 N. W. 124; Bauman v. Metzger, 145 Minn. 133, 176 N. W. 497; Skolnick v. Gruesner, 196 Minn. 318, 265 N. W. 44; Holen v. M. A. C. 250 Minn. 130, 84 N. W. (2d) 282.

■  Had an objection been made to the complaint in the court below and a claim for relief made under Rule 12.02, it probably would have been granted, since it must be conceded that the complaint, strictly construed, does not set forth the conditions precedent to a stockholder's derivative suit as required by Rule 23.02. However, as is apparent from the record, the case was tried as if these conditions had been met. Accordingly, the objection, which in the court below would have been fatal to the complaint, becomes relative when raised for the first time in this court and must be reviewed in relation to the subject matter of the suit.[2] At this stage of the proceeding, the pleading will be viewed as a part of the entire record and will not be subject to the same scrutiny as if it had been attacked on motion in the court below. An appellate court does not look with favor on such a motion when made for the first time on appeal and the complaint will be construed liberally and supported by every legal intendment. If the pleading is good after verdict or sufficient to bar another action for the same cause, it may be sufficient on appeal in the absence of specific objection in the court below. If by fair and reasonable inference a cause of action can be spelled out of the matters pleaded, a construction which will sustain the pleadings is favored. Hartwig v. Loyal Order of Moose, 253 Minn. 347, 91 N. W. (2d) 794; Merriam v. Pine City Lbr. Co. 23 Minn. 314; Potter v. Potter, 224 Minn. 29, 27 N. W. (2d) 784; Segerstrom v. Holland Piano Mfg. Co. 142 Minn. 104, 170 N. W. 930; Getty v. Village of Alpha, 115 Minn. 500, 133 N. W. 159; 2 Mason's Dunnell, Minn. Practice, § 3239, and cases cited therein.

■  The basic issue for determination is the question of whether the defendant owes the corporation the sum which plaintiffs claim he wrongfully withdrew from its account and appropriated to his own use. Under the new Rules of Civil Procedure, pleadings are to be more liberally construed. We must examine the complaint to determine if it gives fair notice to the defendant of the claim asserted and permits

---

[2]Issues litigated by either express or implied consent are treated as if they had been raised by the pleadings. Roberge v. Cambridge Co-op. Creamery Co. 243 Minn. 230, 67 N. W. (2d) 400.

the application of the principle of res judicata. Roberge v. Cambridge Co-op. Creamery Co. 243 Minn. 230, 67 N. W. (2d) 400.

■ While the complaint does not specifically allege the preliminary effort to secure corporate action, we feel that by giving it a liberal construction there may be found sufficient allegation of reasons for not making such an effort. The complaint alleges that the matter of the asserted unlawful appropriation was brought to the attention of the board of directors at a meeting presided over by the defendant Erp, the alleged wrongdoer, and that "Defendant John C. Erp, President, ignored the question, and the Board of Directors failed, and ever since have failed, to take any action for the purpose of securing restoration of the funds withdrawn * * * without authority, as hereinbefore alleged." Erp challenged the board of directors to take action against him and testified that at the particular meeting where the matter was discussed at least one member of the board of directors said she would have no part in any action brought against Erp for return of the money to the corporation. It is apparent from the pleadings and the record that the matter was brought to the attention of the board of directors and was considered, and it may be inferred that either because of the position and influence of the defendant Erp, the longtime president and manager of the corporation, or the negligence or indifference of other members of the board of directors a further demand would have served no purpose. Moreover, since two of the individual plaintiffs who bring this action for the corporation are members of its board of directors, it is reasonable to assume that they brought this matter to the attention of Erp and the other directors without success and it would, therefore, have been useless to make a further formal demand. Whitcomb v. Albany Hdwe. Specialty Mfg. Co. 245 Wis. 86, 13 N. W. (2d) 516.

■ In connection with the defendant Erp's contention that the demand upon the managing directors and shareholders is a prerequisite to the commencement of an action of this nature, it may be conceded that the corporation alone has standing to sue both insiders and outsiders for actionable wrongs committed against it.[3] Ordinarily a demand

---

[3]Note, 73 Harv. L. Rev. 746.

should be made on the board of directors unless the wrongdoers constitute a majority of the board, and a demand should be made on the shareholders unless they are powerless to ratify the wrong alleged or unless the majority of their number is interested. Hawes v. Oakland, 104 U. S. (14 Otto) 450, 26 L. ed. 827; Caldwell v. Eubanks, 326 Mo. 185, 30 S. W. (2d) 976, 72 A. L. R. 621. The derivative suit is recognized as an extraordinary remedy available to the shareholder as the corporation's representative only when there is "no other road to redress."[4] The demand upon the managing directors and shareholders is important in that it gives the management of the corporation an opportunity to consider the merits of the dispute and to determine, in the interests of the corporation and shareholders, whether it might be disposed of without the expense and delay of litigation. The demand requirement as a condition precedent to a shareholder's derivative suit is one not lightly to be dispensed with. However, the corporation with which we are concerned is not an ordinary business concern with significant property interests having the benefit of ordinary business management. Although the corporation with which we are concerned is a legal entity, it is nevertheless a loose, nonstock cooperative without salaried officers or employees and for many years it has been inactive and neglected. As nearly as we can gather from the record, the last regular meeting of the board of directors was probably held in 1949. There may or may not have been a meeting of the board of directors in 1950 at the time of the annual convention. The only meeting of the board of directors thereafter was in 1953 when they came together to discuss the matter of Erp's alleged unlawful appropriation of money. The summons and complaint were served in 1955, and the trial was held in 1958. In view of the character of the corporation, it would be unrealistic to require the same demand for corporate action as would be expected in the case of the ordinary business corporation. We have held that such demand is not required where it is plain from the circumstances that it would be futile. Grudnosky v. Bislow, 251 Minn. 496, 88 N. W. (2d) 847; Rothwell v. Robinson, 39 Minn. 1, 38 N. W. 772.

---

[4]Caldwell v. Eubanks, 326 Mo. 185, 191, 30 S. W. (2d) 976, 978, 72 A. L. R. 621.

■ It has been suggested that the demand requirement under Rule 23.02 is something more than a procedural provision and that it provides a substantive right to the interested parties, and that consequently failure to allege or prove the demand requires a reversal. In considering that objection at this stage of the litigation, we must inquire if the failure to make the demand has prejudiced the rights of the defendant. This question was not submitted to or passed upon by the court below. In disposing of this point it is only necessary for us to observe that the defendant Erp elected to try his case on the theory that the only issue before the court was the question of whether or not he was indebted to the corporation on account of money improperly appropriated. The underlying issue of the case was fully litigated and determined. The court properly found that the defendant did not prove his counterclaim. The defendant is not now in a position to urge on appeal an error growing out of a judgment entered upon what is now claimed was an incorrect theory, when such theory was his own selection. Northland Pine Co. v. Melin Bros. Inc. 142 Minn. 233, 171 N. W. 808; Duluth, M. & N. Ry. Co. v. McCarthy, 183 Minn. 414, 236 N. W. 766; State v. Adams, 251 Minn. 521, 89 N. W. (2d) 661; White v. Western Assur. Co. 52 Minn. 352, 54 N. W. 195; Bauman v. Metzger, 145 Minn. 133, 176 N. W. 497; Skolnick v. Gruesner, 196 Minn. 318, 265 N. W. 44; Holen v. M. A. C. 250 Minn. 130, 84 N. W. (2d) 282.

Affirmed.